IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DORIS STORLIEN,

    Plaintiff,

  vs.            Case No. 05-1283-JTM

JOEL WEIGAND, M.D., PFIZER INC.,
PHARMACIA & UPJOHN COMPANY;
G.D. SEARLE,

    Defendants.

MEMORANDUM AND ORDER

On August 24, 2006, the plaintiff filed a status report inquiring into the status of the present action. The matter had previously been stayed (Dkt. No. 14) on defendants' request, since a portion of plaintiff's claims involved an allegation of injury arising from the prescription drug Bextra. The Judicial Panel on Multidistrict Litigation then had before it a proposed order consolidating many of the nationwide claims involving the medication. On April 12, 2006, the Judicial Panel entered its order transferring a portion of this case involving the drug Bextra to the Northern District of California.

Prior to the transfer order and the order to stay, the plaintiff had submitted a Motion to Remand (Dkt. No. 10). Plaintiff argued that the case was improperly removed since the action included claims against Dr. Joel Weigand, a Kansas resident, and that accordingly there was incomplete diversity among the parties. The pharmaceutical defendants argued that plaintiff had fraudulently joined Weigand in order to thwart removal.

Following the inquiry from counsel, the clerk issued on September 21, 2006, notice to the parties in this action providing that they should file any additional documentation with respect to the matters set forth in plaintiff's status report on or before October 2, 2006.  The same notice further required that any additional argument or pleading with respect to the motion to remand shall be filed on or before October 2, 2006.

Subsequent to this notice, plaintiff submitted a brief statement relating to the current status of the transfer order.  None of the parties has submitted any additional pleadings with respect to the motion to remand.

It is apparent that the Judicial Panel has transferred back to this court those claims relating to the drug Arthrotec or which otherwise do not involve the drug Bextra.  The initial Conditional Transfer Order, Dkt. No. 1699, of December 2, 2005 provided that:  "It is further ordered that all claims in this action except the Bextra claims are separated and simultaneously remanded to the District of Kansas."  The subsequent April 12, 2006 Transfer Order by the Judicial Panel also noted its earlier order "conditionally transferring the Kansas action also conditionally and simultaneously remanded claims in that action relating to a prescription drug in addition to Bextra." (Dkt. No. 15, at 1, n.1).  Ultimately, the Panel provided that "IT IS FURTHER ORDERED that claims in the District of Kansas action relating to the prescription medication Arthrotec are separated and remanded, pursuant to 28 U.S.C. § 1407(a), to the District of Kansas."  (Id. at 2).

The court retains jurisdiction over the non-Bextra claims advanced by plaintiff.  Applying that jurisdiction, the court finds it should remand the action to state court.

As defendant correctly notes, the allegations of fault against defendant Dr. Weigand in plaintiff's original petition were brief.  But this may be expected from notice pleading.  The petition

2

states separately, in Count 1, that Weigand "was careless, negligent and departed from standard, approved medical standards," and in Count 2 that he "failed to inform decedent fully about his capabilities, limitations, restrictions or competency" and that as a result the decedent was unaware of "the risks of Bextra and/or Arthrotec therapy." (Petition, at ¶¶ 17, 22, 23). The complaint accordingly makes separate negligence and failure to inform claims. The separate counts are in fact explicitly denominated "**COUNT I: NEGLIGENCE** *Against Defendant Weigand*" and "**COUNT II: INFORMED CONSENT** *Against Defendants* [sic] *Weigand*" (Dkt. No. 5, at 4-5) (all emphasis in original).

In determining whether removal is proper, the court examines the sufficiency of the plaintiff's complaint at the time of removal. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991). *See also Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939) (holding that post-removal "second amended complaint should not have been considered" because removal "was to be determined according to the plaintiffs' pleading at the time of the petition for removal"). As a result, the court cannot look to the allegations which the plaintiffs raised for the first time after removal in their motion to remand.

Fraudulent joinder exists if a plaintiff would be unable to establish a cause of action against the joined defendant in state court. *Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1157 (D. Kan. 2004).

The defendants contend that similarly nebulous negligence or failure to warn allegations against physicians have been held to constitute fraudulent joinder and thus not prevent federal removal jurisdiction where the complaint raises otherwise removable diverse claims against pharmaceutical companies. *See Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762-763 (S.D. W. Va.

3

2003); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001); *Flores v. Merck & Co.*, Civ. Action No. C-03-362, slip op. at 2 (S.D. Tex. Mar. 15, 2004) (upholding removal jurisdiction where plaintiffs made only "conclusory, general allegations of negligence against [the physicians] which they fail to support with specific, underlying facts").

The court in *Baisden v. Bayer Corp.* set forth the general theory underlying the conclusion in these cases:

> Defendants have provided numerous cases, which they argue are similar to this one, on which courts have denied remand based on fraudulent joinder because a premise of the claim asserted against the non-diverse defendant is knowledge of the dangers posed by the drug at issue - a knowledge withheld from them by the co-defendant drug company, as the remainder of the complaint alleges. *See e.g.*, *In re Baycol Products Litigation* (*Spier v. Bayer Corp.*), Case No. 02-4835, 2003 WL 21223842 (D.Minn. May 27, 2003)(conclusory allegation doctor knew or should have known of Baycol's risks absent supporting factual assertions will not defeat fraudulent joinder); *Rezulin Products Liability Litigation*, MDL No. 1348, Case No. 02-Civ. 3583, 2003 WL 43356 (S.D.N.Y. Jan. 6, 2003) (claims doctor failed to warn about Rezulin, failed to test and monitor liver functions, cannot possibly be proven because premised on knowledge allegedly withheld); *Louis v. Wyeth-Ayerst Pharm.*, Civil Action No. 5:00CV102LN (S.D.Miss. Sept. 25, 2000)(non-diverse pharmacists fraudulently joined where, given allegations against manufacturers, no reasonable basis supports claim they knew or should have known of drug dangers).
>
> In the *Baycol* and *Rezulin* cases that find fraudulent joinder, the impossibility of the claim against the non-diverse defendant(s) is implicit in the contradictory allegations: 1) defendant manufacturer hid the information that 2) non-diverse doctor or pharmacist knew or should have known. In each of these cases, the premise of the case against the non-diverse defendant(s) that they knew or should have known of the dangers is undercut, defeated, and made impossible by the claims of fraud and misrepresentation against the manufacturers, who allegedly prevented anyone from knowing the dangers. That contradiction, apparent on the face of the complaint, is also present here.
>
> Aside from Count XI against Dr. Endicott, the other ten counts of the Amended Complaint lie against the defendant drug manufacturer for Baycol-related injuries. **The gravamen of the malpractice case against Dr. Endicott is his failure to know what allegedly was deliberately hidden:** his failure to recognize, diagnose, monitor, supervise and treat Baisden for the effects of Baycol treatment.

275 F.Supp.2d at 762-63 (emphasis added).  That is, in these cases the only claim advanced against the non-diverse physician is the wholly contradictory failure to warn of the dangers of a drug which the complaint also alleges that the manufacturer concealed.  The claim against the physician is —

if the allegations against the drug makers are true — an "impossibility." *Baisden*, 275 F.Supp.2d at 762.

If the allegations against Dr. Weigand in plaintiff's complaint were limited to Count 2's Informed Consent allegation, the case for fraudulent joinder might have legs. Count 2 alleges that Dr. Weigand failed to fully inform the decedent, and that the decedent was injured as a result by not adequately being informed of the dangers of the medications Bextra and Arthrotec. In contrast, the petition makes extensive allegations that the pharmaceutical defendants' medicines were defective and dangerous and that the defendants acted to ensure that their medicines would be used without adequate warning.

But the allegations against Dr. Weigand were not so limited. The plaintiff also advanced a general claim of medical malpractice against Dr. Weigand. The claim is certainly little more than the bare minimum of the elements of negligence, but it is there. And reviewing the face of the complaint itself, there is no way that the court could conclude as a matter of inescapable logic that plaintiff could not recover on such a claim. That is, the court cannot say based upon the face of the complaint that it is impossible for Storlien to recover against Dr. Weigand for medical negligence.[1]

It may be that upon remand to state court the defendants could prevail in a motion for more definite statement, requiring the plaintiff to more fully set forth the negligence allegations. But this court finds that the defendants have not met their heavy burden of showing that the joinder of Dr. Weigand was fraudulent in that there is *no possibility* of the success of such claims.

---

[1]The plaintiffs have since elaborated on the medical negligence claim by suggesting that Dr. Weigand was at fault in conducting negligent endoscopic exams, ignoring contraindications, and performing an erroneous gastrointestinal bleed diagnosis. (See Dkt. No 10 at ¶ 14 and 9).

IT IS ACCORDINGLY ORDERED this 25th day of October, 2006 that the Clerk of the Court is directed to modify its April 17, 2006 docket notation reflecting the termination of this case to reflect the findings herein, and that plaintiff's Motion to Remand (Dkt. No. 10) is granted, and the present action is remanded to the Eighteenth Judicial District Court, Sedgwick County, Kansas.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE